IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| TEAMSTERS JOINT COUNCIL NO. 83 | ) | |
| OF VIRGINIA PENSION FUND, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:08CV340-HEH |
| | ) | |
| EMPIRE BEEF CO., INC. and | ) | |
| WEIDNER REALTY ASSOCS., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This is a civil action brought under the Employment Retirement Income Security

Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, by the Teamsters Joint Council No. 83

of Virginia Pension Fund ("Pension Fund") and its trustees against Empire Beef Co., Inc.

("Empire"), a New York corporation, and Weidner Realty Associates ("Weidner"), a New

York general partnership. On April 27, 2009, the Court awarded Plaintiffs summary

judgment against Empire.[1]  The Court held a trial without a jury on May 18, 2009, to

decide Plaintiffs' claims against Weidner.  For the reasons stated herein, the Court finds

that Plaintiffs failed to prove their claims against Weidner by a preponderance of the

evidence, and, therefore, those claims will be dismissed.

---

[1]Unless the parties can stipulate to the amount of Plaintiffs' damages, the Court will hold
further proceedings to determine the amount of damages for which Empire is liable.

## I.   BACKGROUND

Weidner was formed in the 1930s to purchase a nine-acre parcel of land located at 171 Weidner Road in Rochester, New York.  Shortly after the purchase, the parcel was converted from a junkyard to a slaughterhouse, and Empire was formed to operate the slaughterhouse.[2]  Empire assumed responsibilities for all aspects of ownership of the property, including maintenance and repairs, but did not sign any lease agreement with Weidner or pay any rent for use of the land.  Empire also paid for and controlled all the improvements made to the property.  At no time, did Weidner maintain any office, possess any bank accounts, or transact any business independently from its relationship with Empire.  At all times before 1993, Weidner remained the record owner of the property.

In 1993, Empire sought financing from Key Bank in the amount of $1.8 million for improvements to the property.  A condition of the financing required that the County of Monroe Industrial Development Agency ("COMIDA") become the record owner of the property.  Also, Key Bank and COMIDA required Weidner and Empire to enter into a lease agreement with respect to the property as a condition of the financing.  Under the agreement, Empire was responsible for all aspects of ownership of the property, including payment of any and all expenses, payment of all property taxes and insurance premiums, and performing any required maintenance.  The agreement, however, did not require

---

[2]Empire's business initially consisted of processing and distributing beef and then expanded to include other food products.

2

Empire to pay any rent to Weidner for leasing the property. Also in 1993, the partners of Weidner—Sidney Levine, Steven Levine, and Empire—entered into a Partnership Agreement. Under the Partnership Agreement, Sidney Levine owns a 50% partnership interest, Steven Levine owns a 12.5% partnership interest, and Empire owns a 37.5% partnership interest.

In approximately 2002, Empire expanded its distribution territory into the southern United States and established a terminal in Richmond, Virginia. Ultimately, the venture was unsuccessful, and Empire ceased its operations in Richmond on or about September 30, 2005. On December 14, 2005, the Pension Fund notified Empire that its cessation of operations in Richmond triggered its withdrawal liability. The Pension Fund established a payment plan under which Empire would pay monthly installments to satisfy its obligations. Empire made its first payment on February 3, 2006, and made payments pursuant to the payment plan for twenty months. Empire made its last payment to the Pension Fund on August 28, 2007. On September 6, 2007, Empire filed a voluntary petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Western District of New York.

On January 10, 2008, the Bankruptcy Court issued an Order dismissing Empire's Chapter 11 bankruptcy proceeding. On February 5, 2008, the Pension Fund notified Weidner that it was jointly and severally liable for Empire's assessed withdrawal liability, plus interest, in the amount of $485,936.18. Specifically, the Pension Fund contended

3

that Weidner is jointly and severally liable for Empire's withdrawal liability because it is

a member of Empire's "control group" under ERISA rules and regulations.

On June 3, 2008, Plaintiffs filed this action against Empire and Weidner seeking to

recover Empire's unpaid withdrawal liability. Empire did not dispute that it is

responsible for payment of its withdrawal liability to the Pension Fund, and the Court

entered summary judgment against Empire on April 27, 2009. Weidner contested

Plaintiffs' claims of joint and several liability on the grounds that it was not a "trade or

business" as defined by ERISA and that it was not part of Empire's "control group." The

case proceeded to trial without a jury on May 18, 2009.

## II.   ANALYSIS

Congress amended ERISA in 1980 by enacting the Multi-Employer Pension Plan

Amendments Act ("MPPAA"), 96 Pub. L. No. 364, 94 Stat. 1208 (1980) (codified at 29

U.S.C. § 1381). Pursuant to the MPPAA, an employer who withdraws from an ongoing

multi-employer pension plan becomes immediately liable for withdrawal liability—a

proportionate share of the pension plan's unfunded vested liability. 29 U.S.C. § 1381.

Under ERISA, an "employer" is broadly defined and includes "trades or businesses . . .

which are under common control." *Id.* § 1301(b)(1). For the purposes of its opinion, the

Court will assume, without deciding, that Weidner qualifies as a "trade or business" under

ERISA.

Plaintiffs must establish common control of Empire and Weidner at the time

4

Empire withdrew from the Pension Fund—September 30, 2005—to hold Weidner jointly and severally liable for Empire's withdrawal liability.[3] *Teamsters Joint Council No. 83 Pension Fund v. Centra, Inc.*, 947 F.2d 115, 121 (4th Cir. 1991). To do so, Plaintiffs must prove by a preponderance of the evidence that the same five or fewer persons own a "controlling interest" in Weidner and Empire and that such persons are in "effective control" of each organization. 26 C.F.R. § 1.414(c)-2(c). "Controlling interest" in a partnership is defined as "ownership of at least 80 percent of the profits interest or capital interest of such partnership." *Id.* § 1.414(c)-2(b)(2)(i)(C). "Effective control" of a partnership is defined as ownership of "an aggregate of more than 50 percent of the profits interest or capital interest of such partnership." *Id.* § 1.414(c)-2(c)(2)(iii).

Steven Levine owns 100% of Empire. Thus, no dispute exists as to who maintains a controlling interest and effective control of Empire. The sole issue related to common control that the Court must resolve turns on whether Steven Levine owns a controlling interest and has effective control of Weidner. At a bare minimum, Steven Levine must "own an aggregate of *more than 50 percent* of the profits interest or capital interest" in

---

[3]Although not stated in their Complaint, Plaintiffs now seek to void the Composition Agreement between Empire and Sidney Levine signed on January 5, 2008. The parties entered into the Composition Agreement before Empire's dismissal from Chapter 11 bankruptcy in an attempt to protect Sidney Levine's claim against Empire from other unsecured creditors. Specifically, the Composition Agreement transferred Empire's share in Weidner to Sidney Levine in exchange for a release from the $1.4 million debt Empire owed Sidney Levine. The Court declines to address the validity of the Composition Agreement because, under Fourth Circuit precedent, the Court's decision must be based on the facts as they existed when Empire withdrew from the Pension Fund on September 30, 2005. *Teamsters Joint Council No. 83 Pension Fund v. Centra, Inc.*, 947 F.2d 115, 121 (4th Cir. 1991).

Weidner to have effective control. *Id.* (emphasis added). If he owns only 50 percent or

less of the partnership, Weidner is not part of the Empire control group as defined by

ERISA.

> The 1993 Partnership Agreement provides that:
>
> Each of the partners shall have a percentage interest in the Partnership as
> follows:
>
> | | |
> |---|---|
> | Sidney E. Levine | 50% |
> | Steven H. Levine | 12 ½% |
> | Empire Beef Co., Inc. | 37 ½% |
>
> The percentage of interest of each of the Partners in the Partnership,
> initially as set forth above, and as the same may from time to time change
> by virtue of transfers of Partnership interests or otherwise, shall be referred
> to in this Partnership Agreement as the "percentage interest in the
> Partnership."

(P'ship Agreement, § 4.1.) Because Steven Levine owns 100% of Empire, the parties

agree that Empire's ownership interest in Weidner is imputed to Steven Levine for the

purposes of ERISA. Therefore, as of September 30, 2005, Sidney Levine and Steven

Levine each owned equal, 50% shares of Weidner. Thus, Steven Levine's share in

Weidner did not exceed 50 percent as required by ERISA to allow a finding that he

maintained effective control of the partnership, and Weidner is not part of Empire's

control group.

Plaintiffs contend, however, that the Court should use the partners' capital account

summary in Weidner as its basis to decide that Steven Levine owns a controlling interest

and has effective control of Weidner. The capital account summary in Weidner's 2004

6

tax return depicts Sidney Levine holding a 16.9% capital account, Steven Levine holding

a 41.9% capital account, and Empire holding a 41.2% capital account. With Empire's

share imputed to Steven Levine, Plaintiffs assert that he owns well more than the requisite

80% to establish a controlling interest.

    The definition of a "capital interest in a partnership" in IRS Publication 541 is "an

interest in its assets that is distributable to the owner of the interest" upon the

partnership's liquidation. (Joint Ex. 1.) Thus, Weidner's accounting expert, Bruce

Newman, contends that the Court should look to Article XII of the Partnership

Agreement, which applies to any liquidation of Weidner, to reach its decision. Article

XII provides:

> Upon the expiration of the term of this Partnership Agreement, or if the
> Partners should sooner agree to cause a termination of the Partnership, the
> Partners shall proceed with reasonable promptness to wind up the business
> of the Partnership. In such event, the assets of the Partnership shall be sold
> and the proceeds of the sale shall be applied or distributed in the following
> order of priority:
>
>   (a)   To pay or provide for the payment of all liabilities of the
>          Partnership;
>   (b)   To pay all expenses of liquidation;
>   (c)   To return to the Partners any credit balance in their capital
>          accounts; and
>   (d)   To the Partners in proportion to their percentage interest in the
>          Partnership.

(P'ship Agreement, art. XII.)

    Plaintiffs, however, cite Section 5.1 of the Partnership Agreement, entitled

"Capital Accounts," to support their position. Section 5.1 states:

7

> A separate capital account shall be maintained for each Partner. The capital interest of each Partner shall consist of his capital contribution, increased by such Partner's subsequent capital contributions and such Partner's share of net Partnership profits, and decreased by distributions to such Partner by the Partnership and his share of Partnership losses.

(P'ship Agreement, § 5.1.) Thus, Plaintiffs, through the testimony of their accounting expert, Joseph Herishen, contend that the Partnership Agreement's purported definition of "capital interest" in Section 5.1 supersedes the term's definition in the internal revenue rules and regulations and that, pursuant to the Partnership Agreement, the partners' fluctuating capital accounts should be used to determine controlling interests and effective control. The Court disagrees.

As an initial matter, Section 5.1 is expressly titled "Capital Accounts," and its definition of "capital interest" is identical to the concept of a capital account—a measure of a partner's basis in partnership assets, plus net income from the firm's operations, less net losses from operations and less withdrawals of funds by the partner for personal use. Thus, the Court believes the reference to "capital interest" in Section 5.1 amounts to nothing more than a scrivener's error. Secondly, as a matter of general accounting, a partner's capital account may vary on a yearly basis depending on the partner's earnings, contributions, and distributions in any given year. But, it does not follow that a partner's fluctuating capital account balance acts to increase or decrease the partner's overall ownership interest in the partnership from year-to-year. Finally, Plaintiffs' reading of Section 5.1 renders Subparagraph (d) in Article XII superfluous. Subparagraph (c) of

8

Article XII requires the repayment of any credit balance in the partners' capital accounts before distributing proceeds in accordance with the partners' percentage interest in the Partnership. Equating the partners' capital accounts with their capital interest in the Partnership would result in the distribution of all proceeds in accordance with Subparagraph (c) of Article XII and would leave nothing to distribute in accordance with Subparagraph (d), rendering Subparagraph (d) meaningless.

Section 4.1 of the Partnership Agreement establishes that the partners' respective shares upon liquidation of Weidner would be Sidney Levine 50%, Steven Levine 12.5%, and Empire 37.5%. Therefore, contrary to Plaintiffs' assertion, Steven Levine does not own more than 50% of Weidner as required by ERISA to find that Weidner is part of the Empire control group. Plaintiffs have failed to prove by a preponderance of the evidence that Weidner is jointly and severally liable for Empire's assessed withdrawal liability. Accordingly, the Court will find in favor of Weidner and against Plaintiffs, and Plaintiffs' claims against Weidner will be dismissed.

An appropriate Order will accompany this Memorandum Opinion.

                                        _____/s/_____
                                        Henry E. Hudson
                                        United States District Judge

Date: June 18, 2009
Richmond, VA

9