IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TEAMSTERS JOINT COUNCIL NO. 83 OF )
VIRGINIA PENSION FUND *et al.*, )
                                                               )
    Plaintiffs,                               )
                                                               )
v.                                                ) Civil Action No. 3:08CV340–HEH

EMPIRE BEEF CO., INC. and
WEIDNER REALTY ASSOCS.,

    Defendants.

**MEMORANDUM OPINION**
(Denying Defendants Motion for Attorneys' Fees)

THIS MATTER is before the Court on Defendants' Motion for Attorneys' Fees (Dk. No. 57), filed on July 27, 2009. This request for attorneys' fees arises from an underlying civil action brought under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, by the Teamsters Joint Council No. 83 of Virginia Pension Fund ("Pension Fund") and its trustees against Empire Beef Co., Inc. ("Empire"), a New York corporation, and Weidner Realty Associates ("Weidner"), a New York general partnership. The parties have filed memoranda of law in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. For the reasons stated below, the Court will deny Defendants' Motion for Attorneys' Fees, pursuant to 29 U.S.C. §1132(g)(1) and 29 U.S.C. § 1451(e).

## I. Background

Weidner was formed in the 1930s to purchase a nine-acre parcel of land located at 171 Weidner Road in Rochester, New York. Shortly after the purchase, the parcel was converted from a junkyard to a slaughterhouse, and Empire was formed to operate the slaughterhouse.[1] Empire assumed responsibility for all aspects of ownership of the property, including maintenance and repairs, but did not sign any lease agreement with Weidner or pay any rent for use of the land. Empire also paid for and controlled all the improvements made to the property. At no time did Weidner maintain any office, possess any bank accounts, or transact any business independently from its relationship with Empire. At all times before 1993, Weidner remained the record owner of the property.

In 1993, Empire sought financing from Key Bank in the amount of $1.8 million for improvements to the property. A condition of the financing required that the County of Monroe Industrial Development Agency ("COMIDA") become the record owner of the property. Also, Key Bank and COMIDA required Weidner and Empire to enter into a lease agreement with respect to the property as a condition of the financing. Under the agreement, Empire was responsible for all aspects of ownership of the property, including payment of any and all expenses, payment of all property taxes and insurance premiums, and performing any required maintenance. The agreement, however, did not require Empire to pay any rent to Weidner for leasing the property. Also in 1993, the partners of

---

[1] Empire's business initially consisted of processing and distributing beef and then expanded to include other food products.

2

Weidner—Sidney Levine, Steven Levine, and Empire—entered into a Partnership Agreement. Under the Partnership Agreement, Sidney Levine owns a 50% partnership interest, Steven Levine owns a 12.5% partnership interest, and Empire owns a 37.5% partnership interest.

In approximately 2002, Empire expanded its distribution territory into the southern United States and established a terminal in Richmond, Virginia. Ultimately, the venture was unsuccessful, and Empire ceased its operations in Richmond on or about September 30, 2005. On December 14, 2005, the Pension Fund notified Empire that its cessation of operations in Richmond triggered its withdrawal liability.[2] The Pension Fund established a payment plan under which Empire would pay monthly installments to satisfy its obligations. Empire made its first payment on February 3, 2006, and made payments pursuant to the payment plan for twenty months. Empire made its last payment to the Pension Fund on August 28, 2007. On September 6, 2007, Empire filed a voluntary petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Western District of New York.

On January 10, 2008, the Bankruptcy Court issued an Order dismissing Empire's Chapter 11 bankruptcy proceeding. On February 5, 2008, the Pension Fund notified Weidner that it was jointly and severally liable for Empire's assessed withdrawal liability,

---

[2] Under ERISA, as amended by the Multi-Employer Pension Plans Amendment Act, an employer that withdraws from an ongoing multi-employer pension plan becomes liable for its proportionate share of the plan's unfunded vested liability. 29 U.S.C. § 1381.

3

plus interest, in the amount of $485,936.18. Specifically, the Pension Fund contended that Weidner was jointly and severally liable for Empire's withdrawal liability because it was a member of Empire's "control group" under ERISA rules and regulations.

On June 3, 2008, Plaintiffs filed this action against Empire and Weidner seeking to recover Empire's unpaid withdrawal liability. Empire did not dispute that it is responsible for payment of its withdrawal liability to the Pension Fund, and the Court entered summary judgment against Empire on April 27, 2009.[3] Weidner contested Plaintiffs' claims of joint and several liability on the grounds that it was not a "trade or business" as defined by ERISA and that it was not part of Empire's "control group." The Pension Fund countered by arguing that under the 1993 Weidner Partnership Agreement, partner Steven Levine owned more than 50% of the profit interest or capital interest in Weidner, thus making him an Empire "control group" member.[4] Relying on a definition of "capital interest" in the Partnership Agreement, the Pension Fund claimed they had conclusive proof of Levine's common control. The case proceeded to trial without a jury on May 18, 2009.

At the conclusion of that trial, the Court found that the Pension Fund had failed to

---

[3] Both parties stipulated to damages in the amount of $590,755.85, in regards to Defendant Empire Beef.

[4] Under the Weidner Partnership Agreement, Sidney Levine owns a 50% partnership interest, Steven Levine owns a 12.5% partnership interest, and Empire owns a 37.5% partnership interest. Due to Steven Levine's 100% ownership of Empire, under ERISA, Empire's ownership in Weidner is imputed to him. Therefore, Steven Levine and Sidney Levine each own a 50% interest in Weidner.

4

prove their claims against Weidner by a preponderance of the evidence, and by subsequent Memorandum Opinion dismissed those claims. With respect to Steven Levine's interest, the Court held that as of September 30, 2005, Sidney Levine and Steven Levine each owned equal 50% shares of Weidner. Thus, Steven Levine's share in Weidner did not exceed 50%, as required by ERISA. Accordingly, the Court found that Weidner was not part of Empire's control group. The Court also rejected the Pension Fund's argument that under the terms of the Partnership Agreement, as written, a partner's capital <u>interest</u> is somehow defined by the amount in their capital <u>account</u>. Ultimately, the Court held that a "scriveners error" in the Partnership Agreement defeated the Pension Fund's argument that Levine owned more than a 50% interest in Weidner.[5]

On July 8, 2009, the Pension Fund filed a Notice of Appeal to the United States Court of Appeals for the Fourth Circuit (Dk. No. 51). On July 17, 2009, the parties made a Joint Agreed Motion to Restore Case to the Active Docket for the Limited Purpose of Addressing Weidner's Request for Attorney's Fees (Dk. No. 53). This motion was granted on July 23, 2009, by this Court and the case was reopened and restored to the active docket for this limited purpose. On July 27, 2009, the Defendant filed this present motion.

---

[5] This "scriveners error" improperly equated the definition of capital interest and capital account, which led the Pension Fund to assume that a fluctuating capital account had a bearing on Levine's capital interest in the Weidner partnership.

## II. Analysis

### A. Statutory Provision

"Each party in a lawsuit ordinarily shall bear its own attorney's fees unless there is express statutory authorization to the contrary." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975). Under 29 U.S.C. § 1132(g)(1), "ERISA provides that in an action brought 'by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.'" *Griggs v. E.I. Dupon De Nemours & Company*, 385 F.3d 440, 453 (4th Cir. 2004) (quoting 29 U.S.C.A. § 1132(g)(1)). Likewise, under 29 U.S.C. § 1451(e), "[I]n any action under this section, the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party." In both statutory provisions, "only a prevailing party is entitled to consideration for attorney's fees in an ERISA action." *Martin v. Blue Cross & Blue Shield of Va., Inc.*, 115 F.3d 1201, 1210 (4th Cir. 1997). A prevailing party is a "legal term of art" defined as "a party in whose favor a judgment is rendered." *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Resources*, 532 U.S. 598, 603 (2001) (citing Black's Law Dictionary 1145 (7th ed. 1999)).

In this present action, Weidner seeks attorney's fees pursuant to ERISA Section 502(g)(1), 29 U.S.C. § 1132(g)(1) and under MPPAA Section 4301(e), 29 U.S.C. § 1451(e). Both provisions maintain that a prevailing party is the only party entitled to

consideration for attorney's fees under ERISA. For the purposes of its opinion, the Court will assume that due to this Court's June 18, 2009, judgment in favor of Weidner, they qualify as a "prevailing party" under both provisions.

**B.     Award of Attorneys' Fees–Five Factor Test**

"ERISA places the determination of whether attorney's fees should be awarded in an ERISA action completely within the discretion of the district court." *Quesinberry v. Life Insurance Company of North America*, 987 F.2d 1017, 1028 (4th Cir. 1993). "ERISA does not automatically mandate an award of attorneys fees to a prevailing party." *Id.* at 1030 n.11 (citing *Monkelis v. Mobay Chemical*, 827 F.2d 935, 936 (3d Cir. 1987)). Instead, "to guide the district court's exercise of discretion in awarding attorneys fees under ERISA" a five factor test has been developed. *Id.* at 1029. "The five factor approach is not a rigid test, but rather provides general guidelines for the district court in determining whether to grant a request for attorneys' fees." *Id.* "No one of these factors is decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address." *Id.* However, "it is essential, in 'order to ensure an adequate basis for review' for the trial court to have addressed each factor." *Mid Atlantic Medical Services, LLC v. Sereboff*, 407 F.3d 212, 221 (4th Cir. 2005) (quoting *Johannssen v. Dist. No. 1-Pac. Coast Dist.*, 292 F.3d 159, 179 (4th Cir. 2002). The five factors are:

> (1) degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an

7

award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Id.* (*citing Reinking v. Philadelphia American Life Insurance Co.*, 910 F.2d 1210, 1217-18 (4th Cir. 1990).

In following the general guidelines set forth in the five factor test, Weidner's request for attorneys fees is denied. This determination is made by assessing each of the five factors and holding that the factors weigh in favor of denying the award. This Court finds that the Pension Fund did not exercise a significant degree of bad faith in pursuing the control group theory against Weidner, an award of attorneys' fees would likely not deter other parties from acting under similar circumstances, and the parties requesting attorney's fees did not resolve a significant legal question regarding ERISA itself.

### 1. Degree of Opposing Parties' Bad Faith

In their request for attorneys' fees, Weidner fails to prove either a significant degree of culpability or bad faith on the part of the Pension Fund. This conclusion is premised on three factors, namely Weidner's own incorrect definition of "capital interest" in the Partnership Agreement, Weidner's decision to not move for summary judgment, and the Pension Fund's fiduciary obligation to actively pursue withdrawal liability claims against control group members. To find bad faith on the record at hand, would run contrary to Fourth Circuit case law, which states that "mere negligence or error does not constitute bad faith." *Wheeler v. Dynamic Engineering, Inc.*, 62 F.3d 634, 641(4th Cir.

1995) (citing *Reinking,* 910 F.2d at 1218). For these reasons, this Court finds no bad faith on the part of the Pension Fund in pursuing its claim against Weidner.

### 2. Ability of Opposing Parties to Satisfy an Award of Attorneys' Fees

The Pension Fund admits they have the financial ability to pay an award of attorneys' fees. For this reason, the Court finds the second factor has been satisfied.

### 3. Whether an Award of Attorneys' Fees Would Deter Other Persons

Weidner further argues that because the Pension Fund continued to prosecute the underlying action in an effort to force settlement or risk a negative outcome at trial, the Court should award attorneys' fees to deter other parties from doing the same. This Court disagrees. Given the fiduciary duty statutorily vested in the Pension Fund to vigorously pursue withdrawal liability on behalf of the Funds beneficiaries, an award of attorneys' fees in this case has minimal deterrence value.

### 4. Whether the Party Requesting Attorneys' Fees Sought to Resolve a Significant Legal Question Regarding ERISA

Weidner also contends that because they were able to prevent the Pension Fund from using an incorrect definition of "capital account" in their Partnership Agreement as a means to obtain control group liability, they have deterred others from using the same argument. Weidner significantly overstates the precedential

9

effect of the Court's findings. Weidner's legal victory turned, in substantial part, on a "scrivener's error" and construction of textual ambiguities, as opposed to adding gloss to the body of law interpreting ERISA

### 5. Relative Merits of the Parties Positions

Since this Court found in favor of Weidner after a May 18, 2009, bench trial, Weidner obviously had a superior position concerning control group liability over the Pension Fund, satisfying the fifth factor.

## III. Conclusion

Of the five factors that must be considered in awarding attorneys fees, factors one, three, and four clearly weigh against awarding attorneys' fees, while the second and fifth weigh in favor of Weidner. While all five factors must be carefully considered in this case, the Court finds factor one (Bad Faith), three (Deterrence), and four (Significant Legal Question) to be particularly persuasive.

Accordingly, because the totality of the factors weigh against awarding fees, the requested relief will be denied. No determination of the reasonableness of attorneys fees is necessary due to Weidners inability to fulfill the five factor test.

An appropriate order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Sept 3, 2009
Richmond, VA

10